IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER LAWRENCE, | ) |
| *Plaintiff,* | ) No. 17 C 2495 |
| v. | ) Judge Virginia M. Kendall |
| A. MARTIJA, M.D., | ) |
| *Defendant.* | ) |

## ORDER

Peter Lawrence, a state prisoner, sued Dr. Alma Martija alleging she did not provide him constitutionally adequate medical care when she refused to refill his prescribed asthma medication. (Dkt. 17.) Dr. Martija moved for summary judgment (Dkt. 83) arguing the undisputed evidence shows she appropriately treated Lawrence's asthma. Lawrence responded contending he suffered two asthma attacks because he was not given the rescue inhaler that Dr. Martija prescribed. (Dkt. 93.) Unless otherwise noted, the parties agree on the facts that follow, making summary judgment appropriate here one way or the other.

Lawrence is a 36-year-old male inmate who suffers from chronic asthma. (Dkt. 92 ¶ 7; Dkt. 103 ¶ 1.) He uses two inhalers—Xopenex and Alvesco—to treat his condition. (Dkt. 92 ¶ 7.) Dr. Martija, a staff physician at the prison, helps conduct an asthma clinic that patients such as Lawrence can attend on a periodic basis in connection with monitoring and treating their conditions. *Id.* ¶¶ 13–14. Lawrence is enrolled in the asthma clinic at his facility and doctors see him there a few times a year to check his peak flow, lungs, and vitals. *Id.* ¶ 15.

On October 21, 2014, Dr. Martija saw Lawrence in the asthma clinic for the last time that year. *Id.* ¶¶ 18, 36. Dr. Martija noted in her records that Lawrence was using Alvesco 160mg, Xopenex 45mg, Claritin 10mg, and nasal saline spray. *Id.* ¶ 19. Alvesco is an inhaler that should be used daily, one puff twice per day, to prevent acute asthma attacks. *Id.* ¶ 25. Xopenex is a rescue inhaler that should be used as needed, two puffs every four to six hours. *Id.* ¶ 26; Dkt. 103 ¶ 6.

Dr. Martija observed that Lawrence's lungs were clear and there was no wheezing with forced expiration. (Dkt. 92 ¶ 21.) Dr. Martija also administered a peak flow

test to measure the air flow in and out of Lawrence's lungs. *Id.* ¶ 23. At the time of this check-up, Lawrence's last asthma attack had occurred on December 3, 2013. *Id.* ¶ 22. After reviewing Lawrence's history and performing a physical examination, Dr. Martija decided that Lawrence's asthma was under "good control," meaning that Lawrence had not visited the health care unit because of an asthma attack since his last clinic appointment, which was nearly eleven months earlier. *Id.* ¶ 24.

Lawrence informed Dr. Martija that he was using his Xopenex rescue inhaler three to four times per day, even when he was not having an asthma attack. *Id.* ¶ 27. Lawrence additionally told Dr. Martija that he was using the Alvesco once or twice a day. *Id.* ¶ 28. After hearing all this, Dr. Martija opined that Lawrence was improperly self-administering his inhaler treatments because she (and other medical professionals) directed him to use Xopenex two puffs, four times per day *as needed*. *Id.* ¶ 29. Dr. Martija found it necessary to, in her words, "re-educate" Lawrence on the proper usage of both his inhalers. *Id.* ¶ 30.

The parties dispute whether Lawrence complained to Dr. Martija that his rescue inhaler, Xopenex, was empty. *Id.* ¶¶ 20, 33. That dispute is moot, though, because on the same day of Lawrence's appointment (October 21), Dr. Martija wrote a prescription order for Alvesco 80mg, one puff twice per day for six months, and Xopenex, two puffs twice a day as needed for six months. *Id.* ¶¶ 34–35. The prison medical staff, however, did not immediately fill this prescription on October 21. *Id.* ¶ 35.

Dr. Martija does not dispense medication, including inhalers, to her patients. *Id.* ¶ 39. Instead, medical technicians distribute prescriptions and other necessities. *Id.* ¶ 45. Lawrence had previously obtained his Xopenex inhaler on October 9. *Id.* ¶ 49. On October 23, two days after his appointment with Dr. Martija, Lawrence accepted a refilled Alvesco inhaler. *Id.* ¶¶ 49–50. The parties agree that Lawrence received his new Xopenex inhaler sometime in late October 2014. *Id.* ¶ 51. Because he was in Dr. Martija's office on October 21, the longest he would have waited from that appointment until the refill was ten days.

On October 23, 2014, Lawrence had what he calls an asthma attack. *Id.* ¶ 43. He complained to an officer who summoned a medical technician who in turn brought Lawrence to the health care unit. *Id.* At the unit, personnel gave him a breathing treatment and Albuterol, which helped his symptoms. *Id.* The doctor's note from October 23 states that Lawrence is prescribed Alvesco 80mg and Xopenex "PRN," or as needed. *Id.* ¶ 44; *see Williams v. Anderson*, 959 F.2d 1411, 1412 n.2 (7th Cir. 1992). Prior to treatment, Lawrence's peak flow was rated at 420, while after treatment it was rated at 530. (Dkt. 92 ¶ 44.)

On October 30, Lawrence experienced another alleged asthma attack. *Id.* ¶ 48. He once again complained to a correctional officer who sent a medical technician to

see him. *Id.* According to Lawrence, the tech came to his cell with an asthma pump and cared for him through the door. *Id.* The breathing treatment helped Lawrence. *Id.* Lawrence claims he did not receive his refilled Xopenex inhaler until after his two so-called asthma attacks. (Dkt. 103 ¶ 14.) Yet, he admits he received it at the end of October; therefore, he would have received it the following day, October 31, after this treatment.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Lawrence claims his medical treatment in prison violated his constitutional right to adequate medical care under the Eighth Amendment. Courts "use a two-part test to determine if medical care amounted to cruel and unusual punishment . . . ask[ing] 'whether a plaintiff suffered from an objectively serious medical condition' and 'whether the individual defendant was deliberately indifferent to that condition.'" *Gabb v. Wexford Health Sources, Inc.*, No. 18-2351, 2019 WL 2498640, at *3 (7th Cir. June 17, 2019) (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)); *see Cose v. Gorske*, 761 F. App'x 603, 606 (7th Cir. 2019) (citations omitted).

In this case, Dr. Martija does not dispute that Lawrence suffers from an objectively serious medical condition, so the Court assumes—for the purpose of its analysis—that Lawrence's asthma is an objectively serious medical condition. *See Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Lee v. Young*, 533 F.3d 505, 510 (7th Cir. 2008) (quoting *Bd. v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005)); *Williams v. Rodriguez*, 509 F.3d 392, 401–02 (7th Cir. 2007) (citing *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001)). The dispute instead concerns whether Dr. Martija's course of treatment—recommending as needed and not daily use of his rescue inhaler—reflects her deliberate indifference to Lawrence's asthma. The overall treatment record cannot support such a finding.

"'Deliberate indifference' requires a 'subjective state of mind' somewhere between negligence and intention. To show deliberate indifference, 'a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm.'" *Gabb*, 2019 WL 2498640 at *3 (quoting *Petties*, 836 F.3d at 728); *Giles v.*

*Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Courts "examine 'the totality of the inmate's medical care' when considering whether that care evidences deliberate indifference to his serious medical needs . . ." *Heard v. Chapman*, 759 F. App'x 495, 499 (7th Cir. 2019) (quoting *Petties*, 836 F.3d at 728).

First, as a threshold matter, Lawrence does not allege that Dr. Martija personally failed to take actions that would constitute deliberate indifference. This is not a case where a doctor refused to prescribe medication, or where a nurse refused to dispense it. *See, e.g.*, *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). Lawrence candidly admits that Dr. Martija prescribed refills for both of his inhalers on the day of his clinic appointment: October 21. (Dkt. 92 ¶¶ 34–35.) The problem for Lawrence is he did not receive his new rescue inhaler until sometime in the ten days or so that followed his visit with Dr. Martija. *Id.* ¶¶ 35, 51.

Lawrence does not allege that Dr. Martija was personally responsible for the supposed delay. Lawrence's beef, properly understood, is not with Dr. Martija; it is with those persons that are responsible for providing him with his inhaler. *See Garvin*, 236 F.3d at 898. At Lawrence's facility, that would be a medical technician. (Dkt. 92 ¶¶ 39, 45.) The individual techs are the ones charged with carrying out the doctor's orders. That makes the techs, if even them, responsible for any delay in Lawrence receiving his inhaler. *See Garvin*, 236 F.3d at 899. As a staff physician in a more supervisory role, Dr. Martija cannot be held vicariously responsible for the acts or omissions of the entire prison medical staff. *See id.*

Second, Lawrence's claim suffers from another fatal flaw—he did not submit any expert testimony from a medical professional opining that daily use of a rescue inhaler for his condition was medically necessary. "Thus, a jury could not rationally conclude that the [doctor's] treatment was such a significant 'departure from accepted professional standards or practices' that it was objectively unreasonable." *Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019), *reh'g denied* (Apr. 23, 2019) (quoting *Pyles*, 771 F.3d at 409; then citing *McCann v. Ogle Cty., Illinois*, 909 F.3d 887, 884 (7th Cir. 2018)). Nor does it seem likely that it could be, seeing that a rescue inhaler is to be used in times of acute need, as Dr. Martija attempted to explain to Lawrence.

Without expert testimony, a lay jury could not infer that it was obvious to Dr. Martija that Lawrence needed to use his rescue inhaler on a daily basis. It is not at all obvious to the Court. *See Lindsey v. Sauvey*, 764 F. App'x 555 (7th Cir. 2019); *Brown v. Obaisi*, No. 16 CV 10422, 2018 WL 4467098, at *3 (N.D. Ill. Sept. 18, 2018) (observing that Xopenex is a rescue inhaler for use in case of an acute asthma attack, while Alvesco is an inhaler for daily use). By its very nature, a rescue inhaler is one which a patient would use while in distress and when he needs to be "rescued," so to speak, as opposed to a daily inhaler. Because Lawrence failed to present *any* evidence—much less substantial evidence—that his treatment departed from accepted medical judgment, practice, or standards, summary judgment for Dr. Martija is

appropriate. *See Gabb*, 2019 WL 2498640, at *4; *Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017) (internal citations omitted); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663–64 (7th Cir. 2016).

To be sure, Lawrence maintains that a rescue inhaler is the proper way to treat his asthma. *See Lindsey*, 764 F. App'x at 556. But the Constitution does not entitle prisoners to demand the specific treatment of their choice. *See Sperow v. Shah*, 600 F. App'x 478, 480 (7th Cir. 2015) (internal citations omitted). Instead, it entitles them to "'reasonable measures' to prevent a serious risk of harm." *Gund*, 736 F. App'x at 604 (quoting *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011)). Dr. Martija's treatment fell within the wide range of reasonable measures because Lawrence's asthma was under good control. Lawrence's asthma attacks, it seems, did not occur in spite of prescribed treatment because they occurred when Lawrence failed to comply with his prescribed treatment. *See, e.g., Mawalin v. Astrue*, No. 11 C 1627, 2012 WL 874549, at *10 (N.D. Ill. Mar. 14, 2012) (citing *Huffman v. Astrue*, No. 08 C 1336, 2010 WL 685897, at *13 (C.D. Ill. Feb.19, 2010)).

That Lawrence disagrees with his course of treatment does not make it constitutionally unreasonable. *See Mitchell v. Kallas*, 895 F.3d 492, 501 (7th Cir. 2018). Although poor medical judgment does not amount to constitutionally unreasonable judgment, "it can rise to the level of negligence—but the proper forum for a negligence or medical malpractice action is the state court." *West v. Matz*, 740 F. App'x 103, 104 (7th Cir. 2018); *see, e.g., Jenkins v. Wexford Health Sources, Inc.*, No. 12 C 3836, 2013 WL 5529632, at *3 (N.D. Ill. Oct. 7, 2013) (suggesting that a physician "may have been negligent in addressing a single refill request plaintiff made to her verbally."). Accordingly, the Court grants Dr. Martija's motion (Dkt. 83) and enters summary judgment in her favor.[1]

_____
Virginia M. Kendall
United States District Judge

Date: July 19, 2019

---

[1] The Court recruited counsel Matthew S. Arthur and appointed him to represent Lawrence in this case. (Dkt. 70, 73.) Mr. Arthur has ably discharged his duties and the Court thanks him for his service.